[Crim. No. 1170.   Department One.—October 8, 1904.]

## THE PEOPLE, Respondent, v. JOHNNY STROMBECK, Appellant.

CRIMINAL LAW—MARKING COLT TO PREVENT IDENTIFICATION BY OWNER— SLITTING OF EARS—CUSTOMARY USE.—One who marks a colt belonging to another person by slitting its ears, with the intent thereby to prevent identification thereof by the true owner, is guilty of a felony under section 357 of the Penal Code, regardless of whether such mark might be legally adopted under the provisions of the Political Code, or is customarily used to indicate a vicious animal, and not ownership.

ID.—MATTERS NOT PART OF OFFENSE—PROVINCE OF JURY—QUESTION OF INTENT.—It is not material to the offense that the mark placed upon the colt is not of a character usually adopted to indicate ownership, or that it may not accomplish the purpose of actually preventing identification; though these are matters that may be properly weighed by the jury in determining the intent with which the marking was done.

ID.—CONSTRUCTION OF SECTION—" MARKS."—The word "marks," as used in section 357 of the Penal Code, is not to be limited to the

placing on the animal of some "conventional artificial indication of ownership," but the provision was designed to protect the owners of animals by making it a crime for one to in any way mark the animal of another with the intent thereby to prevent identification.

ID.—SUPPORT OF VERDICT—CONFLICTING EVIDENCE AS TO INTENT.—Notwithstanding the evidence was without conflict as to the customary use of the slitting of ears of horses to indicate a vicious animal, and not ownership, yet where the evidence shows that where the slitting was done the defendant knew that the colt belonged to the true owner, and was not an estray, and the evidence of the circumstances of the case conflicted with the testimony of the defendant upon the question of intent to prevent identification by such owner, the verdict of guilty of the offense charged will not be disturbed upon appeal.

ID.—CHARACTER OF MARK USED—REFUSAL OF REQUESTED INSTRUCTIONS —CHARGE OF COURT.—It was not error to refuse requested instructions as to the character of the mark used, where the instructions given by the court were as liberal as any that the defendant was entitled to in that regard.

APPEAL from a judgment of the Superior Court of Madera County and from an order denying a new trial. W. M. Conley, Judge.

The facts are stated in the opinion of the court.

W. H. Larew, and G. G. Goucher, for Appellant.

U. S. Webb, Attorney-General, and C. N. Post, Assistant, Attorney-General, for Respondent.

ANGELLOTTI, J.—An information was presented against defendant, wherein it was charged that he "did willfully, unlawfully, and feloniously mark a certain domestic animal, to wit: A stud colt, belonging to one Thomas Beasore, by then and there slitting the ears of said animal with intent thereby to prevent identification thereof by the true owner, to wit: the said Thomas Beasore." Having been found guilty by a jury, and adjudged to suffer imprisonment in the state prison for two years, he has appealed from the judgment and from an order denying his motion for a new trial.

1. The information states a public offense under the provisions of section 357 of the Penal Code. That section is as follows: "Every person who marks or brands, alters, or defaces the mark or brand of any horse, mare, colt, jack, jen-

net, mule, bull, ox, steer, cow, or calf belonging to another, with intent thereby to steal the same, or to prevent identification thereof by the true owner, is punishable by imprisonment in the state's prison for not less than one nor more than five years.''

Under its terms one who in any way marks any animal therein named belonging to another, with intent thereby to prevent identification thereof by the true owner, is guilty of a felony. It can make no difference that the mark placed on the animal is not of a character usually adopted for the purpose of indicating ownership, or that it may not accomplish the purpose of preventing identification. These are matters that may properly weigh with the jury in determining as to the intent with which the marking was done. It is the placing of any mark on such an animal, with the intent thereby to prevent identification by the true owner, that constitutes the crime.

That one who slits the ears of a horse or colt thereby ''marks'' the same within the ordinary meaning of that word is clear. He thereby places some visible sign or impression on the animal which to some extent changes its natural appearance, attracts the attention, and conveys some information or intimation. That such a mark might tend to impede the owner of the animal in the identification thereof is likewise clear. The statutes recognize that such a mark might be legally adopted as a mark to indicate ownership, for they expressly provide that no person must use a mark ''by cutting off the ear or by cutting the ear on both sides to a point.'' (Pol. Code., sec. 3171.) But it is immaterial in this connection whether the mark in fact used is such that it might be *legally* adopted as a mark under the provisions of the Political Code. It is sufficient that it is a mark, placed on the animal with the unlawful intent.

Counsel for defendant seeks to limit the meaning of the word ''marks'' as used in this section to the placing on the animal of some ''*conventional* artificial indication of ownership,'' but we find no warrant for such limitation in the plain language of the statutory provision. The portion of the section here involved was designed to protect the owners of animals, by making it a crime for one to in any way mark the animal of another with the intent thereby to prevent

identification by the owner, and we do not see how any mark made with such unlawful intent can be excluded from the operation of the section.

We have considered the other points made in support of the demurrer to the information, and are satisfied that the demurrer was properly overruled.

2. It is contended that the verdict was contrary to the evidence, the particular contention being, that there was no evidence to show the specific criminal intent necessary to complete the crime. The defendant testified substantially as follows: Having gone out ''upon the range'' to find one of his three colts, he found his colt, and also the stud colt mentioned in the information, with several others, and, never having seen this animal before, he concluded that it was an estray and that he would claim it. He told his companion, Wagner, that it was his colt, and, having driven the horses into Wagner's corral, lassoed this animal, threw it down, branded it with ''F. N.,'' a brand of Wagner, and split its ears. After this had been done and the animal was released, it followed the defendant around the corral, and he saw that it had been theretofore handled. The defendant then concluded that it was not an estray and that he should not have branded him, and the next morning took the colt about two miles from the place, burned out the brand, and turned the animal loose upon the range. He testified that he split the ears simply because he intended to use the horse as a saddle horse, and liked the looks of a saddle horse with split ears; that, although he had been the owner of horses before, this was the first time that he had ever slit the ears of a horse; that he had always understood that when a horse's ears were split it was to signify that the animal was mean or vicious, and that he had never heard of such a thing being done for the purpose of identifying an animal or as a mark of ownership.

There was evidence that the defendant had admitted that at the time he slit the ears of the animal he knew that it belonged to Thomas Beasore.

It was admitted that the defendant branded the colt and slit its ears, and afterwards burned out the brand and turned the colt loose.

The testimony was without conflict to the effect that it has

been a custom for many years to split the ears of vicious or unmanageable horses, that a split in a horse's ear was intended to signify that the horse was vicious, and that such splits are never used as marks of ownership.

The foregoing is substantially all the evidence shown by the record. The defendant acknowledging that he slit the ears of the colt, and there being evidence sufficient to sustain a finding by the jury that at the time he so did he knew that the animal belonged to and was the property of Thomas Beasore, the question remained as to whether the slitting was done for the purpose of preventing identification of the animal by Beasore. Upon this question we cannot say that the finding of the jury is not sustained by the evidence. Where some particular intent is a necessary element to constitute an act a crime, such intent may be sufficiently shown by the circumstances surrounding the commission of the act.

Here, in support of the verdict, it must be assumed that the defendant knew that the colt was the property of Beasore, and that he did not think it was an estray. Under these circumstances he, having taken the animal from the range where it was grazing, placed a brand upon it and slit its ears. The evidence as to the placing of the brand on the animal was of course material and competent upon the question as to what the intention of the defendant was in the slitting of the ears. Both things were done by the defendant at the same time, and apparently, despite defendant's statement to the contrary, for the same purpose. The nature of the act, the thus double marking of the animal by brand and mark, and the circumstances attending the doing thereof, including statements made by defendant which the jury found to be untrue, were sufficient to sustain the finding that the slitting was done for the purpose of preventing identification of the animal. That it might reasonably assist in accomplishing that purpose is very clear, even if such slits are not ordinarily used as marks of ownership, and are generally used simply to indicate a vicious animal. The statement of the defendant as to his reason for thus marking the animal was of course not conclusive upon the jury. The most that can be said for defendant is, that there was a conflict in the evidence as to the intent with which the act was done, and the well-settled rule that the appellate court will not under such circumstances

disturb the finding of the jury prohibits us from interfering therewith.

The case of *Fossett* v. *State,* 11 Tex. App. 40, 45, relied on by defendant, fully recognizes the rule that "the surrounding facts—the facts and circumstances which hover around and give character to the act"—are to be taken into consideration in determining as to the intent with which such an act as is here involved is done.

3. Complaint is made that the court refused to give certain instructions requested by the defendant. We have examined these requested instructions and find no error in the action of the court. The court did instruct the jury that before they could convict the defendant they must be convinced by the evidence beyond a reasonable doubt that the slitting of the horse's ears was such a marking of an animal as might prevent the identification thereof by the true owner, and this was certainly as liberal an instruction in regard to the character of the mark as the defendant was entitled to. As has been said before, it is the placing of any mark upon the animal with the intent thereby to prevent identification by the owner that is denounced by the statute here involved. Whether the mark adopted by the offender for that purpose is such that it will accomplish the result desired is not material. What the statute really makes an offense is an attempt to prevent the identification of the animal by the true owner by the placing of a mark thereon. As in the case of an attempt to commit a crime, it is not essential that the means used should in fact be capable of accomplishing the result designed. The jury were very fully instructed that they could not convict the defendant unless they were satisfied beyond a reasonable doubt that the defendant slit the animal's ears for the purpose of preventing its identification by the true owner.

The judgment and order are affirmed.

Shaw, J., and Van Dyke, J., concurred.