[Crim. No. 4321. First Dist., Div. One. Dec. 16, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. GARY EDWARD ATWOOD, Defendant and Appellant.

Robert N. Beechinor, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, Albert W. Harris, Jr., Keith E. Pugh, Jr., and J. F. Kraetzer, Deputy Attorneys General, for Plaintiff and Respondent.

SULLIVAN, J.—Defendant Gary Edward Atwood was found guilty by a jury of burglary of the first degree. (Pen. Code, §§ 459, 460, subd. 1.) Upon defendant's arraignment for judgment, the court on its own motion modified the verdict to a finding of guilty of burglary of the second degree (Pen. Code, § 460, subd. 2) and sentenced defendant to the state prison. Defendant appeals from the judgment.

On January 16, 1962, at about 11 p.m. Wilbur Fradenburg, one of the owners of the Park Auto Reconstruction Company, a garage located on Stanyan Street in San Francisco (hereafter for convenience referred to as the "garage"), having entered the garage and locked the gate behind him, went upstairs to bed in his flat over the garage. At about 2 a.m. he was awakened by the sound of the gate sliding open, but thinking that his employee was putting the latter's car in the garage, did nothing about investigating.

When Fradenburg came down to the garage at about 7:30 a.m. the next morning, he noticed that the lock on one of the gates had been broken and that the parts of the lock were on

the ground. He found the office of the garage "pretty much a shambles." Missing from the office were two adding machines, a check-writing machine, payroll and other checks, several automobile certificates of ownership, and certain tools. The safe had been pulled away from the corner of the office and was out about 4 feet into the room. A case of masking tape of substantial size which had been on top of the safe the night before, was on a chair alongside the safe. Fradenburg called the police.

San Francisco Police Inspector Walter Ihle, assigned to the police crime laboratory and a qualified fingerprint analyst, arrived at the garage at about 9 a.m. on January 17. He developed a latent palmprint on the right top edge of the safe approximately 14 inches from the front. Ihle testified that he believed the print was no more than three to five days old and that it was made by the left palm of the defendant. He also found other latent prints on the safe which were not defendant's and could not be otherwise identified.

San Francisco Police Inspector Edward McLaughlin, assigned to the burglary detail, testified that on May 9, 1962,[1] he had a conversation with defendant at the city prison. Defendant and the inspector were the only persons present. The inspector testified that after identifying himself by name and occupation, he told defendant that he was assigned to the case of the Park Auto Reconstruction Company at 624 Stanyan Street and asked him if he knew anything about it, and that defendant said "No"; that he then asked defendant if he had ever been there and defendant said "No"; that he then described the premises and location of the garage in more detail and asked defendant if such further information enabled him to recollect if he had ever been on the premises and that defendant said "No." McLaughlin further testified: "And I then informed Mr. Atwood that from the office of these, of this location, a palmprint had been taken from the top of the safe, which subsequently was identified as belonging to him. And Mr. Atwood made no answer to that, and I terminated the interview and left him."

Defendant took the stand on his own behalf. He testified on direct examination that he had first been in the garage

[1]Defendant was arrested outside of San Francisco but not in connection with the instant case on May 7, 1962. He had been in custody in San Francisco since May 8, 1962, having been booked on suspicion of burglary.

about a week after his birthday, January 2, or in other words about January 9, to purchase an article to keep the fan belt of a friend's car from slipping; that he talked to a man in the office; that he saw the safe there; that he "could have" touched the safe but that he didn't remember doing so; and that he remembered that he had dropped his ring "over by the safe" and that he "might have touched the safe" when he reached over to pick up the ring.

Defendant further testified on direct examination that about three or four days later (or in other words January 12 or 13) he went to the garage again with a friend, one Richard Shaw, to speak to the garage mechanic about some difficulty with the drive shaft on Shaw's car; that they were on the premises only 5 or 10 minutes; that they had stopped by the office to ask the person there where the mechanic was; that he did not recall that he at any time touched "any of the articles" located in the office; and that he had never been on the garage premises on any other occasion. Defendant could not recall his whereabouts on the morning of January 17 but was positive he was not at the garage.

On direct examination, defendant gave his version of the conversation which he had with Inspector McLaughlin on May 9, 1962, as follows: that the inspector told him that he was going to be charged with burglary and that he, McLaughlin, had defendant's fingerprints, not a palmprint, "found at this burglary"; and "if I cared to make any statements to him. And that was about all of the conversation. I told him that I didn't know anything about any burglary." According to defendant, McLaughlin mentioned the garage by name but not its address or location and defendant did not at any time tell the inspector that he had never been on the garage premises. On cross-examination, defendant denied that he had ever told the inspector that he had never been on the premises; denied that the inspector had informed him that his palmprint had been found on the safe; and denied that he had remained silent upon being informed of such fact.

Defendant was the only witness for the defense. His friend Shaw was never produced.

Defendant contends before us (1) that the information fails to state a public offense; (2) the evidence is insufficient to support the verdict; and (3) certain instructions to the jury were prejudicially erroneous.

The information in the instant case accuses defendant "of the crime of felony, to-wit: VIOLATION OF SEC-

TION 459 Penal Code committed as follows: The said defendant, on or about the 17th day of January 1962, at the City and County of San Francisco, State of California, did enter the premises of PARK AUTO RECONSTRUCTION Co., located at 624 Stanyan Street, with intent to commit theft.''

Defendant claims that by the use of the word ''premises'' the information is fatally defective since it thereby fails to charge an entry of any of the structures enumerated in Penal Code section 459. ''Premises'' is not found therein. It is asserted that the word ''premises'' encompasses far more than the structures listed in the section and in its usual acceptance includes unimproved land, entry upon which would not constitute burglary. As a result, says defendant, the information charges no offense at all and is void.

The purpose of an indictment or information is to inform the accused of the charge which he must meet at the trial. *(People* v. *Yant* (1938) 26 Cal.App.2d 725, 730 [80 P.2d 506]; *People* v. *Brac* (1946) 73 Cal.App.2d 629, 634-635 [167 P.2d 535].) As the court stated in *People* v. *Randazzo* (1957) 48 Cal.2d 484, 489 [310 P.2d 413]: ''An information is sufficient if it charges the defendant with the commission of a public offense in words sufficient to give him notice of the offense of which he is accused. *(People* v. *Roberts*, 40 Cal.2d 483, 486-487 [254 P.2d 501]; Pen. Code, § 952.) Only the essential elements of the offense need be charged. *(People* v. *Britton*, 6 Cal.2d 1, 5 [56 P.2d 494].) Notice of the particular manner, means, place or circumstances of the offense is given, not by detailed pleading, but by the transcript of the evidence before the committing magistrate. *(People* v. *Pierce*, 14 Cal.2d 639, 646 [96 P.2d 784].) ''

The word ''premises'' has various meanings and must be considered in relation to that which it precedes, or to which it refers *(Ballsun* v. *Star Petroleum Co.* (1930) 105 Cal.App. 679, 687 [288 P. 437]). As was noted in *Ballsun* the term has come to mean not only land, land and appurtenances, and land together with the buildings thereon, but also buildings as distinct from the land on which they are located and even parts of buildings. In *County of San Mateo* v. *Consolidated Farms, Inc.* (1959) 169 Cal.App.2d 735, 738 [337 P.2d 840], this court observed that the legal concept of the word premises is a very fluid one depending upon the situation and the purpose of its use. Webster's Third New International Dictionary (1963) defines

"premises" as: "premises pl. a archaic: property that is conveyed by bequest or deed  b: a specified piece or tract of land with the structures on it  c: a building, buildings, or part of a building covered by or within the stated terms of a policy (as of fire insurance)  d: the place of business of an enterprise or institution." It is apparent therefore that the term can mean buildings alone as well as unimproved land.

██ The information herein notified defendant that he was being charged with the violation of a statute covering burglary. It further told defendant that he stood accused of entering the "premises" of the Park Auto Reconstruction Co. with intent to commit theft. Defendant knew from previous visits that such "premises" consisted of a garage located in a building. The information then in fact told him that he was accused of entering a building to commit theft. We think that the language therein used was sufficient to give him notice of the offense of which he was accused and complied with the provisions of Penal Code sections 951 and 952. ██ If the use of the word "premises" was productive of any uncertainty and ambiguity in the information, it was incumbent upon defendant to raise the question by demurrer and his failure to do so constituted a waiver of such objection. (Pen. Code, §§ 1003, 1004; *People* v. *Heim* (1961) 196 Cal.App.2d 1, 5 [16 Cal.Rptr. 277] ; *People* v. *Pounds* (1959) 168 Cal.App.2d 756, 759 [336 P.2d 219], motion for leave to file writ of habeas corpus denied 365 U.S. 808 [81 S.Ct. 709, 5 L.Ed.2d 702] ; *People* v. *Brac, supra,* 73 Cal.App. 2d 629, 635.) ██ As stated in *People* v. *Perfetti* (1928) 88 Cal.App. 609, 616 [264 P. 318], "[a]fter sitting still and taking chances on the verdict of the jury, he cannot now come into this court and urge that sections 950, 951, and 952 of the Penal Code . . . were not complied with."

The defect of which defendant here complains is one of an imperfect allegation of a material fact rather than a total failure to set forth a material element. (*People* v. *Schwarz* (1927) 201 Cal. 309, 312 [267 P. 71] ; *People* v. *Griesheimer* (1917) 176 Cal. 44, 49 [167 P. 521] ; *People* v. *Fuski* (1920) 49 Cal.App. 4, 7 [192 P. 552].) ██ "Even where an indictment or information is so defective that a demurrer thereto should have been sustained, still, if upon the trial the crime sought to be charged is fully proved, the case falls within the saving grace of section 4½ of article VI of the California Constitution, and of section 960 of the Penal Code, relating to errors in matters of pleading, and the error is not prejudicial." (*People* v. *Beesly* (1931) 119 Cal.App.

82, 87 [6 P.2d 114, 970]. In accord: *People* v. *Pierce* (1939) 14 Cal.2d 639, 644-646 [96 P.2d 784]; *People* v. *Codina* (1947) 30 Cal.2d 356, 359 [181 P.2d 881]; *People* v. *Gordon* (1945) 71 Cal.App.2d 606, 611 [163 P.2d 110]; *People* v. *Schoeller* (1950) 96 Cal.App.2d 61, 64-65 [214 P.2d 565]; see also *People* v. *Hinshaw* (1924) 194 Cal. 1, 23 [227 P. 156]; *People* v. *Bonfanti* (1919) 40 Cal.App. 614, 615-617 [181 P. 80].)

The cases of *People* v. *Frost* (1932) 125 Cal.App.Supp. 794 [12 P.2d 1096], *People* v. *Kloss* (1933) 130 Cal.App. 194 [19 P.2d 822] and *In re Digiuro* (1950) 100 Cal.App.2d 260 [223 P.2d 263] cited by defendant are distinguishable from the case before us, all holding that under the particular circumstances of each case, the respective defendant had not been notified of the offense with which he was charged. In both *Frost* and *Kloss* there was an absolute failure to state in the information one of the constituent elements of the offense. In *Digiuro*, because of the use of only conclusionary language, the defendant was nowhere notified of the gravamen of the purported offense.

We turn to defendant's claim that the evidence does not support his conviction. ▮ Our inquiry on this point must be governed by the settled rule stated in *People* v. *Newland* (1940) 15 Cal.2d 678, 681 [104 P.2d 778] that '' 'before the verdict of the jury, which has been approved by the trial court, can be set aside on appeal upon the ground' of insufficiency of the evidence, 'it must be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below. . . . ▮ We must assume in favor of the verdict the existence of every fact which the jury could have reasonably deduced from the evidence, and then determine whether such facts are sufficient to support the verdict.' ▮ If the circumstances reasonably justify the verdict of the jury, the opinion of the reviewing court that those circumstances might also reasonably be reconciled with the innocence of the defendant will not warrant interference with the determination of the jury.'' (See also *People* v. *Daugherty* (1953) 40 Cal.2d 876, 885 [256 P.2d 911], cert. denied 346 U.S. 827 [74 S.Ct. 47, 98 L.Ed. 352].)

▮ In the instant case, the prosecution's evidence[2]

---

[2]The People called only three witnesses: Fradenburg, one of the owners of the garage; Ihle, the fingerprint analyst; and Inspector McLaughlin.

pertinent to the problem at hand boils down to two items:
(1) defendant's palmprint found on top of the safe; and (2)
defendant's denial, when questioned by Inspector McLaugh-
lin, that he had ever been in the garage and his subsequent
silence when informed by the inspector that his palmprint
had been found on the safe. We must determine whether the
above evidence reasonably justifies the jury's verdict.

      "Fingerprint evidence is the strongest evidence of
identity, and is ordinarily sufficient alone to identify the
defendant." (*People* v. *Riser* (1956) 47 Cal.2d 566, 589 [305
P.2d 1]; *People* v. *Adamson* (1946) 27 Cal.2d 478, 495 [165
P.2d 3]; *People* v. *Ang* (1962) 204 Cal.App.2d 553, 555 [22
Cal.Rptr. 455]; *People* v. *Wise* (1962) 199 Cal.App.2d 57, 60
[18 Cal.Rptr. 343]; *People* v. *Beem* (1961) 192 Cal.App.2d
207, 211 [13 Cal.Rptr. 238].) Palmprint evidence is of equal
force and sufficiency.[3] (See *People* v. *Buckowski* (1951) 37
Cal.2d 629, 631-632 [233 P.2d 912], cert. denied 342 U.S.
928 [72 S.Ct. 369, 96 L.Ed. 692]; 3 A.L.R. 1694, 1706.)

      Generally speaking whether fingerprints or palmprints
of the accused are alone sufficient to identify the defendant as
the criminal must depend on the particular circumstances of
the case. (*People* v. *Adamson, supra; People* v. *Wise, supra*.)
Where such prints are found at the place of forced entry,
particularly where such location is normally inaccessible to
others, there is a reasonable basis for the inference that the
prints were made there at the time of the commission of the
offense and under such circumstances may alone be sufficient
to identify the accused. (*People* v. *Ramirez* (1931) 113 Cal.
App. 204, 205-206 [298 P. 60] (fingerprints on dusty suitcase
piled on top of show window and beneath hole cut in ceiling
where entry made); *People* v. *Rodis* (1956) 145 Cal.App.2d
44, 45-46 [301 P.2d 886] (fingerprints on outside of window
which was nine feet above the ground and through which
entry made); *People* v. *Beem, supra*, 192 Cal.App.2d 207, 209
(fingerprint on storeroom side of door connecting storeroom
and men's room in a bar); *People* v. *Massey* (1961) 196
Cal.App.2d 230, 232 [16 Cal.Rptr. 402] (fingerprint on in-
side of open bedroom window through which burglar fled).)

      Fingerprints under other proper circumstances may
alone be sufficient to identify the accused, as for example

---

[3]In the instant case Inspector Ihle testified that all criteria for posi-
tive fingerprint identification also hold for positive palmprint identifica-
tion.

where he was not on the premises before the commission of the crime, or the jury rejects his testimony that he was, or accepts other testimony precluding the possibility of an earlier imprinting of the fingerprints. (See *People* v. *Ang, supra,* 204 Cal.App.2d 553, 555, where defendant was a patron at café on the night of the burglary and his fingerprint was found on a chrome bar of a juke box the next morning, the jury believing the testimony of the proprietress that she cleaned and polished the chrome bar after defendant left and before the burglary and rejecting defendant's contention that his print had been placed there the night before.)

In the case before us, defendant's palmprint established by the testimony to be no more than three to five days old was found on the safe on the morning of January 17, 1962. The print was not found at a point of forced entry or at a point inaccessible to the general public, but in the office of the garage where defendant testified he had been for a lawful purpose on two previous occasions, once on or about January 9, 1962, and the other time on or about January 12 or January 13. However the jury were not required to believe the defendant (*People* v. *Wise, supra,* 199 Cal.App.2d 57, 60; *People* v. *Beem, supra,* 192 Cal.App.2d 207, 211) and were entitled to believe and accept the testimony of Inspector McLaughlin. As already stated, the inspector testified that defendant during an interview denied that he had ever been at the garage. When subsequently in the same conversation the inspector informed defendant about the palmprint, defendant remained silent and made no mention of the two visits upon which he relied at trial. The evidence of the palmprint considered with the testimony of the inspector justified the conclusion of the jury that the palmprint must have been made at the time of the commission of the crime. Supportive of this conclusion would be the circumstance that defendant made no attempt to produce his friend Shaw in order to corroborate his testimony as to his visit to the garage on January 12 or January 13. In addition, the false and contradictory statements of defendant in relation to the offense charged constitute in themselves corroborative evidence by showing a consciousness of guilt. (*People* v. *Santo* (1954) 43 Cal.2d 319, 327 [273 P.2d 249], cert. denied 348 U.S. 959 [75 S.Ct. 451, 99 L.Ed. 749]; *People* v. *Osslo* (1958) 50 Cal.2d 75, 93 [323 P.2d 397], cert. denied 357 U.S. 907 [78 S.Ct. 1152, 2 L.Ed.2d 1157].)

Assuming *arguendo* that the jury had believed defendant's account of his two previous visits to the garage, they could still have reasonably inferred that the palmprint was made at the time of the commission of the crime. In the light of Inspector Ihle's testimony that the print was no more than three to five days old, it could not have been made before January 12, 1962, and the jury could have reasonably concluded that defendant did not make it on his first visit to the garage on January 9, 1962. Defendant's testimony concerning his second purported visit on January 12 or January 13, fairly read according to the rules governing our review, amounts to no more than this: that he and a friend went to the garage to see a mechanic about some car trouble; that he "believed" that they "stopped in the office" to ask who the mechanic was; that someone in the office pointed out the mechanic (obviously somewhere else in the garage) and they then proceeded over to the mechanic; and that defendant did not recall touching *anything* in the office. Notably defendant did not testify that he was anywhere near the safe on this occasion. The jury therefore could still reasonably infer that he left his palmprint on the safe at the time of the commission of the crime (cf. *People* v. *Ang, supra,* 204 Cal.App.2d 553) and considered defendant's two previous visits as evidence of his familiarity with the premises. (*People* v. *Mercer* (1951) 103 Cal.App.2d 782, 790 [230 P.2d 4]; *People* v. *Lanza* (1960) 186 Cal.App.2d 860, 863 [9 Cal.Rptr. 161].)

We next consider defendant's claim that the court committed four separate errors, all of them prejudicial, in its instructions to the jury.

The first claim of error is predicated upon the giving of the following instruction: "The law of this State admonishes you to view with caution the testimony of any witness which purports to relate an oral admission of the defendant."[4]

Defendant urges that the above instruction should not have been given but that in its place the court should have given CALJIC No. 30[5] and No. 30-A[6] or "either" of them.

---

[4]Although the record does not disclose at whose request this instruction was given, the parties seem to agree that it was not requested by defendant.

[5]CALJIC No. 30 reads: "If you should find from the evidence that there was an occasion when the defendant, under conditions which fairly afforded him an opportunity to reply, failed to make denial, or made false, evasive or contradictory statements, in the face of an accusation,

It is defendant's position that the instruction on oral admissions should not have been given because there was no evidence that defendant made any oral admissions, citing *People* v. *Ramsey* (1962) 202 Cal.App.2d 856, 860 [21 Cal. Rptr. 406]. This point has merit. The only evidence to which the instruction could possibly be applicable is the testimony of Inspector McLaughlin summarized above. Defendant's denials, therein recounted, of any knowledge on his part about the garage case and as to ever having been on the garage premises did not constitute admissions. (*People* v. *Simmons* (1946) 28 Cal.2d 699, 712 [172 P.2d 18].) Nor did his subsequent silence upon being informed by the inspector that his palmprint was found on the safe constitute an *oral* admission. ▮ Oral admissions must consist of verbal utterances. (See 7 Wigmore on Evidence (3d ed.) § 2094, p. 467.) ▮ It is clear then that there was no evidence of an oral admission to justify the giving of the instruction.

However, it is necessary for us to determine whether the testimony of Inspector McLaughlin established on defendant's part an admission *by conduct* or an *implied admission* of his guilt. (Code Civ. Proc., § 1870, subd. 3.) ▮ As was stated in *Simmons, supra*: "Accusatory statements ... are plain hearsay. They may properly find their way into the record only as admissions, under the familiar exception to the hearsay rule. If the accused responds to the statement with a flat denial, there is no admission and hence nothing that may be received in evidence. ▮ If, on the contrary,

expressed directly to him or in his presence, charging him with the crime for which he now is on trial or tending to connect him with its commission, and if you should find that he heard the accusation and understood its nature, the circumstance of his silence and conduct may be considered against him as indicating an admission that the accusation thus made was true. Evidence of such an accusatory statement is not received for the purpose of proving its truth, but only to explain the conduct of the accused in the face of it; and unless you should find that his conduct at the time indicated an admission that the accusatory statement was true, you should entirely disregard the statement."

[6]CALJIC No. 30-A prior to its revision in 1962 read: "Evidence if any, that the defendant, on one or more occasions other than from the witness stand, made false, contradictory or misleading statements concerning the charge against him which now is being tried may be considered by the jury as a circumstance tending to prove a consciousness of guilt, but is not sufficient of itself to prove guilt. The weight to be given to such a circumstance, and the significance, if any, to be attached to it, are matters for the jury to determine." (The 1962 revision of this instruction deleted the words "or misleading.")

the truth of the statement is admitted, the statement may properly be introduced. A third situation is presented when the accused stands mute in the face of the accusation or responds with an evasive or equivocal reply. In that situation this court has held that *under certain circumstances* both the statement and the fact of the accused's failure to deny are admissible on a criminal trial as evidence of the acquiescence of the accused in the truth of the statement or as indicative of a consciousness of guilt." (28 Cal.2d at p. 712.)

It is to be noted that the testimony in question was introduced without any attempt whatsoever to comply with the foundation requirements prescribed by *Simmons, supra.*[7] No objection was made by defendant that such proper foundation had not been laid. No objection of any kind was made to *the introduction of the testimony. No motion to strike was* made. Understandably, defendant's present counsel, who was not his counsel in the trial court, does not, as he cannot, now claim that the testimony of the inspector was erroneously admitted. (*People* v. *Stepp* (1947) 82 Cal.App.2d 49, 51 [185 P.2d 417] ; *People* v. *Vacca* (1960) 185 Cal.App.2d 125, 128-129 [8 Cal.Rptr. 64].)

Defendant, instead, argues that the inspector made a mere "statement" and that defendant's subsequent silence was merely "informative" in nature and did not constitute an admission. We disagree. In response to the inspector's questions, defendant said that he knew nothing about the garage case and had never been on the garage premises. When the inspector then told defendant about the discovery of his palmprint on the safe, the latter remained silent. We said in *People* v. *Moore* (1963) 211 Cal.App.2d 585, 597 [27 Cal.Rptr. 526] : "An accusatory statement is a statement expressed directly to a person or in his presence accusing him of a crime or tending to connect him with its commission. [Citations.] It is 'a statement . . . made by another person in

[7] *Simmons* quoted from *People* v. *Yeager* (1946) 194 Cal. 452, 486 [229 P. 40] as follows: "It is for the court in the first instance to determine whether the import of the statements is such that it would furnish a foundation for proof of conduct, and it is then for the jury to decide whether the accused was aware the statements were made, whether, under all of the circumstances shown, they called for a disclaimer, whether the accused did reply to them, and whether if he did not do so, such failure showed criminal intent or a consciousness of guilt. If these propositions of fact are resolved in favor of the prosecution the item of conduct should be given the effect to which upon the entire case it is entitled." (28 Cal.2d at p. 713.)

the presence of a party to the action, containing assertions of fact which, if untrue, the party would under all the circumstances naturally be expected to deny. . . .' (McCormick on Evidence, § 247, p. 528.)'' Clearly the inspector's statement was accusatory. It was in effect an assertion that despite the fact that defendant claimed he had never been at the garage, his palmprint had been found at the scene of the crime. This certainly implied that the print was made at the time of the commission of the crime and tended to connect defendant with its commission. Defendant then had an opportunity to reply and explain, according to his later version, that the print had probably been made during a preceding and lawful visit to the premises.

Furthermore, defendant does not here claim, nor do we find anything in the record impelling the conclusion that, on the occasion of his conversation with the inspector, defendant was attempting to assert his constitutional privilege against self-incrimination. Thus defendant makes no contention before us that the admission of the inspector's accusatory statement was reversible error despite defendant's failure to object. (See *People* v. *Simmons, supra,* 28 Cal.2d 699, 716.)

This brings us to the second part of defendant's contention: namely that whether there was an *implied admission* of guilt was a question for the jury (see footnote 7, *ante*) and hence the trial court should have given CALJIC instructions No. 30 and No. 30-A or, as we apprehend the argument, instructions substantially similar thereto. Defendant makes no showing that he requested such instructions and that they were refused.[8] It would appear that defendant's claim is that the court had a duty to give the above or similar instructions on its own motion.

It is the duty of the court in a criminal case to give,

---

[8]Defendant's reply brief is significantly silent on this point which is noted in the People's brief. Indeed the record before us wholly fails to show what, *if any,* instructions were requested by the respective parties and is devoid of any instructions requested but refused. As the court said in *People* v. *Letourneau* (1949) 34 Cal.2d 478, 493 [211 P.2d 865]: ''Under such circumstances, the appellant fails to show and we have no means of ascertaining whether the statement or the omission of any specific proposition of law was requested by a particular party or was given or omitted on the court's own motion. If a party is to make any point, whether of commission or omission, in relation to the giving of instructions, all the instructions requested should be filed and included in the record and, as stated in *Vaughn* v. *Jonas* (1948) 31 Cal.2d 586, 596 [191 P.2d 432], 'Each instruction should be identified by a number and should indicate by whom it was requested or that it was given by the

of its own motion, instructions on the general principles of law governing the case, even though not requested by the parties, but it is not its duty to give instructions upon specific points developed through the evidence introduced at trial, unless such instructions are requested by the party desiring them. (*People* v. *Warren* (1940) 16 Cal.2d 103, 116-117 [104 P.2d 1024]; *People* v. *Putnam* (1942) 20 Cal.2d 885, 890 [129 P.2d 367]; *People* v. *Wade* (1959) 53 Cal.2d 322, 334 [1 Cal.Rptr. 683, 348 P.2d 116].)

We therefore face the question whether in the instant case the aforementioned or similar instructions covering the conduct of defendant in response to accusatory statement fall within ''general principles of law'' or ''specific points developed at trial.'' In *Wade, supra,* the court said that ''[t] he most rational interpretation of the phrase 'general principles of law governing the case' would seem to be as those principles of law commonly or closely and openly connected with the facts of the case before the court.'' (53 Cal.2d at p. 334.) In both *Warren, supra,* and *Putnam, supra,* it was pointed out that the trial court is not relieved of the duty to give instructions whose necessity is ''developed through the evidence introduced at the trial'' (*People* v. *Warren, supra,* 16 Cal.2d 103, 117; *People* v. *Putnam, supra,* 20 Cal.2d 885, 890) and that '' [a]n instruction is necessary if it is vital to a proper consideration of the evidence by the jury.'' (*People* v. *Putnam, supra.*)

Under any realistic appraisal of the evidence, the inspector's testimony concerning defendant's silence when informed about the discovery of his palmprint was crucial to the case. Moreover the evidence on this point was in sharp conflict because defendant denied that the inspector told him about the palmprint and denied that upon receipt of any such information he remained silent. While the court admitted this testimony without objection, it was at the same time required to submit to the jury for the latter's determination under proper instructions the question whether in the light of all the evidence there was an *implied* admission by the defendant of his guilt. Defendant was therefore entitled to have the jury determine whether or not an accusatory

court of its own motion; on each requested instruction the trial judge should endorse the fact as to whether it was given or refused or given as modified, with the modification, if any, clearly indicated.' The burden is on the appellant to affirmatively show error and prejudice therefrom; he has not, on this record, sustained such burden.''

statement had been made, directed to him and tending to connect him with the commission of the offense; whether or not such statement was made under conditions fairly affording defendant an opportunity to reply; whether or not he failed to make a denial thereof; and whether or not he heard and understood the statement. Any appropriate instruction would, as CALJIC No. 30 does, tell the jury that if they should find unfavorably to defendant on the above matters, the circumstance of his silence might be considered as indicating that the accusation was true, that evidence of the accusatory statement was not received for the purpose of proving its truth but only to explain defendant's conduct in the face of it, and that if his conduct did not indicate an admission, the accusatory statement was to be entirely disregarded by the jury.

Our preceding observations were confined to the inspector's single statement concerning the palmprint and defendant's failure to respond thereto. As we have pointed out, the inspector prior thereto had asked defendant three questions which were met with denials, two of which questions inquired as to whether defendant had ever been at the garage. At trial defendant testified that he *had* been at the garage on *two* occasions. The evidence on this portion of the inspector's testimony was also in sharp conflict, defendant denying that he told the inspector that he had never been on the premises. All of this evidence was crucial to the case. To fully and fairly charge the jury on this aspect of defendant's conduct, the court should have submitted to them for their determination under proper instructions the question whether defendant had made false or contradictory statements on the matter. An adequate instruction along the lines of CALJIC No. 30-A[9] would have told the jury that they might have considered any such evidence of false or contradictory statements as a circumstance tending to prove a consciousness of guilt but not sufficient of itself to prove guilt, the weight and significance thereof to be a matter for their determination.

Instead of giving appropriate instructions on an *implied* admission of guilt and on conduct showing consciousness of guilt, the court gave only a cautionary instruction on *oral* admissions, which are *express* admissions, not implied admissions, and are predicated on words, not conduct. Its vice

[9]Our recommendation now would be for CALJIC No. 30-A as revised in 1962.

consisted in the fact that there was no evidence of an oral admission in the inspector's testimony or anywhere else in the record. Such an instruction was in no way an adequate substitute for an instruction on admission by conduct or an instruction on consciousness of guilt. We think that it would have a tendency to mislead the jury by permitting them to conclude that the inspector's testimony related to oral admissions. As we have seen, such testimony was to be measured by other criteria.

It is therefore beyond argument that the court failed to instruct the jury on the law of implied admissions including that aspect bearing on the defendant's consciousness of guilt. Such instructions appertain to the vital question whether the defendant admitted he was guilty of the offense. We must therefore conclude that under the particular evidentiary circumstances of the case, the failure of the court to give on its own motion appropriate instructions on the above subjects was error.

■ However after an examination of the entire cause, including the evidence, we are not persuaded that it is reasonably probable that a result more favorable to defendant would have been reached in the absence of the error. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243], cert. denied 355 U.S. 846 [78 S.Ct. 70, 2 L.Ed.2d 55].) While the evidence on the palmprint conversation was in sharp conflict,[10] an instruction along the lines of CALJIC No. 30 would have told the jury that defendant's silence could be considered as an admission of the accusation. The accusation was that defendant's print had been found at the scene of the crime and in its strongest implication that defendant left it there at the time of the burglary. Defendant however at no time denied that the palmprint was his but contended that he made it lawfully on a previous visit. The uncontradicted evidence was that the print was no more than three to five days old. As we have shown, the defendant could not have made the print on his first claimed visit nor even is his own testimony susceptible of the inference that he made the print on the second visit. The jury then could reasonably conclude that it was made at the time of the crime without relying at all on any implied admission. The failure to give an instruc-

---

[10]The inspector testified he informed defendant of it whereupon defendant remained silent. Defendant testified the inspector told him that defendant's fingerprints were found and asked for a statement whereupon defendant denied knowing anything about the burglary.

tion along the lines of CALJIC No. 30 did not therefore prejudice defendant.

As to the instruction on consciousness of guilt (see CAL-JIC No. 30-A), since the record *does* show contradictory statements by defendant, the instruction in our view would only emphasize them and to this extent would not be favorable to him. While the statement in the instruction that evidence of falsehood would not of itself be sufficient to prove guilt might be favorable, it would appear that in this case the instruction as a whole would not be. We feel therefore that under the facts of the case, the defendant was not prejudiced by the court's failure to so instruct.

Finally we feel that while the instruction on oral admissions should not have been given, under the facts of the case and for the reasons indicated above, it is not reasonably probable that a result more favorable to defendant would have been reached, had it not been given.[11]

The second claim of error with respect to instructions asserts that the court failed to instruct the jury regarding the significance of a number of witnesses as provided in Code of Civil Procedure section 2061, subdivision 2.[12] Defendant makes no showing that he requested such an instruction. We have carefully examined the instructions given by the court and are of the opinion that when considered as a whole, they charged the jury that it was the conviction produced in their minds by the credibility of the witnesses rather than the mere number of witnesses which was to be the determinative factor in arriving at defendant's guilt or innocence.

Thirdly, defendant complains that the court failed to instruct the jury that defendant was entitled to the individual opinion of each juror. In this instance also, defendant makes no showing that he requested such an instruction. In *People* v. *Singh* (1912) 20 Cal.App. 146 [128 P. 420] the court refused to give certain *requested* instructions to the effect that defendant was entitled to the individual opinion of each

[11]Assuming *arguendo* that the jury might have deemed it applicable to defendant's oral *denials*, the instruction to some extent was favorable to defendant since it admonished the jury to view the testimony with caution.

[12]Code Civ. Proc., § 2061 provides in relevant part: ''The jury ... are, however, to be instructed by the court on all proper occasions: ... 2. That they are not bound to decide in conformity with the declarations of any number of witnesses, which do not produce conviction in their minds, against a less number or against a presumption or other evidence satisfying their minds; ...''

member of the jury and that if any juror entertained a reasonable doubt of defendant's guilt he should not vote for a verdict of guilty merely because a majority of the jurors believed the defendant guilty. The court said: "The requested instructions were in effect simply admonitory and cautionary of the sworn duty of the jurors, and merely told them to do what they should do without any instruction upon the subject. We apprehend that if the refusal to give such an instruction was the only point involved in the case of *People* v. *Dole,* 122 Cal. 486 [55 P. 581, 68 Am.St.Rep. 50], and the other cases following it, the judgment in those cases would not have been reversed. If that be so, then it must be held here that, although the refusal to give similar instructions in the present case was error, it was not an error which, standing alone, requires a reversal of the judgment." (20 Cal. App. at pp. 150-151.) ■ As was said in *People* v. *Wade supra,* 53 Cal.2d 322, 332-333, "[t]his court has long held that the right of a juror to disagree in good conscience with his fellow jurors is a matter of universal knowledge among men of average intelligence, such as we must presume jurors to be. [Citation.]" We feel that the failure of the court to give the instruction, if error, was not prejudicial to defendant.

■ Finally, defendant, while admitting that the court gave a proper definition of burglary in the course of the instructions, contends that the court "in effect invited the jury to disregard such instruction" because of a comment made at the very outset of the instructions. After a few opening remarks, the court said: "I think you know what a burglary is without me giving you the instructions." We think defendant's contention is far-fetched. It is obvious that at this point the court was merely adverting to the general knowledge of a layman in respect to the crime of burglary. The comment was purely prefatory. The court later gave an accurate legal definition of the offense. In our view, defendant suffered no prejudice from the opening remarks.

The judgment is affirmed.

Bray, P. J., and Molinari, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 5, 1964.