[Crim. No. 218. Fifth Dist. May 10, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. DONALD EUGENE BRUMLEY, Defendant and Appellant.

Richard E. Johnson for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Edward A. Hinz, Jr., Richard L. Hamilton and Roger E. Venturi, Deputy Attorneys General, for Plaintiff and Respondent.

STONE, J.—Defendant, operator of a cattle auction yard, appeals from a conviction of three counts of violation of Penal Code section 496, subdivision 1, receiving stolen property, and four counts of violation of Agricultural Code section 435, subdivision (b), altering or defacing a brand or mark on an animal with the intent to steal or to prevent identification by the true owner.

One lot or truckload of heifers was stolen from Frank Cardoza by Messrs. Barnes and Shaw. They, together with defendant's brother-in-law, Tittsworth, later stole a second lot or truckload of heifers from the Borba brothers. Both truckloads of cattle were delivered to defendant's auction yard during early morning hours, before daybreak.

Shaw wrote up a bill of sale to the Cardoza cattle, showing a transfer from one "Bruno Ferrini," "two names selected from the telephone directory," as seller, to defendant, as buyer. Tittsworth, defendant's brother-in-law, then rewrote the bill of sale so it would not be in Shaw's handwriting. When arrested, defendant produced this bill of sale and told the officers he had a bill of sale to the Borba cows also, but none was produced. Defendant said he could not identify any of the persons who sold the cattle to him, not even the person who gave him the bill of sale. He also said he paid $1,200 for the 11 cattle in the first load, but subsequently changed his story and said he paid $1,100 for seven animals.

After the cows had been in defendant's corral at the auction yard for a short period, he had his own brand placed on them and some of the earmarkings altered. Defendant placed his brand beside and a little ahead of the Cardoza brand, but he superimposed his brand over part of the Borba brands.

One of defendant's employees lived at the auction yard and was aware that the two lots of cattle had been delivered during the early morning hours, before sun-up. When he noticed fresh cuts on the ears of the cattle and defendant's brand being placed on them, he questioned defendant about the cattle, and received an evasive answer. The conversation concluded by the employee saying, "The road never gets too long but there's an end to it and you better watch out"; to which defendant replied, "Well, just what you don't know won't hurt you." Later defendant moved the cows to his ranch, but told the same employee he had sold them. When the employee chanced to pass defendant's ranch and see the cattle, he asked defendant about them. He testified, in part, as follows: "I said, 'I thought you sold them cows,' and he stuttered a little bit and he said, 'Well, I did. I'm just pasturing them for the guy.' "

Other incriminating evidence adduced was that defendant helped Barnes, who participated in both thefts, buy a cattle truck which was used to transport the Cardoza cows from the pasture where they were stolen, to defendant's cattle yard. After criminal proceedings were instituted, defendant told a friend it would be worth $500 to him to have the cattle brands "messed up."

Defendant testified he had no knowledge that the cattle were stolen, that he bought them from third persons, whom he was never able to produce or even satisfactorily identify, and that he branded the cattle thinking they were his own, with no intent to steal them or prevent identification by the true owners. Defendant attacks the credibility of the witnesses who testified against him, and questions the weight of the evidence which he contends is insufficient to sustain the jury verdict and judgment.

The evidence discussed above, although not direct, provides ample circumstantial evidence of defendant's guilt. ■ Possession of stolen property, accompanied by an unsatisfactory explanation of the possession or by suspicious circumstances, will justify an inference that the property was received with knowledge it had been stolen. (*People* v. *Boinus*, 153 Cal.App.2d 618, 622 [314 P.2d 787]; *People* v. *Bugg*, 204 Cal.App.2d 811, 817 [22 Cal.Rptr. 896]; *People* v. *Lyons*, 50 Cal.2d 245, 258 [324 P.2d 556].) ■ Guilty knowledge requisite to establish the offense of receiving stolen property can be inferred from circumstantial evidence. (*People* v. *Estrada*, 234 Cal.App.2d 136, 157 [44 Cal.Rptr. 165].)

■ Just as knowledge that property has been stolen may be proved by circumstantial evidence, so can intent to brand an animal to prevent identification by the true owner be proved by circumstantial evidence. ■ Alteration of stolen property to prevent identification is a suspicious circumstance from which guilty knowledge may be inferred. (*People* v. *Kot*, 171 Cal.App.2d 9, 12 [339 P.2d 899]; *People* v. *Malouf*, 135 Cal.App.2d 697, 706 [287 P.2d 834].) ■ In this case, the same circumstantial evidence supports both the guilty knowledge of defendant in receiving the stolen property and his intent to brand or alter the brand to prevent identification by the true owner.

Defendant testified he paid approximately $1,100 for the Cardoza cattle, while the record contains testimony that the cows were worth at least twice that amount. ■ A disproportionately low price paid for stolen goods will support an inference that the buyer had knowledge that the property was stolen. (*People* v. *Gould*, 111 Cal.App.2d 1, 7 [243 P.2d 809]; *People* v. *Bartfeld*, 204 Cal.App.2d 701, 706 [22 Cal.Rptr. 618].)

Defendant makes the technical argument that his conviction of four counts of altering the brands of the Borba cattle cannot stand because the Borbas could see enough of their brands beneath defendant's brand to identify their cows. He contends that as long as the prior brand can be detected there has been no altering or defacing of a brand within the meaning of Agricultural Code section 435. The section provides that a crime is committed by any person who "with intent thereby to steal the same or prevent identification by the true owner: ... (b) Alters or defaces a brand or mark on such an animal."

■ To deface does not necessarily mean to obliterate, as defendant argues, nor does "alter" mean to change beyond recognition. ■ There is no doubt from the evidence that although the Borbas were able to identify their brands on the cattle, defendant's brand was superimposed upon a part of each brand and materially altered the same. American Jurisprudence, Second Edition, volume 4, Animals, section 8, page 255, relates that to alter a brand means to change the mark from that which it was before, and defacing ordinarily imparts obliteration of the mark. Here, the Borba brands were not obliterated, but they were altered in that they were materially changed. The case of *People* v. *Strombeck*, 145 Cal. 110 [78 P. 472], was concerned with the violation of former Penal Code section 357, the precursor of Agricultural Code section 435. Both statutes use the language, "alters or defaces." As

the opinion points out, at page 112: "It is the placing of any mark on such an animal, with the intent thereby to prevent identification by the true owner, that constitutes the crime."

We reject defendant's contention that there can be no violation of Agricultural Code section 435 unless a brand or mark is so altered that it becomes indiscernible.

Defendant asserts as a ground of appeal, the denial of his motion to set aside the information, under Penal Code section 995. The record of the proceeding was not brought up on this appeal and we do not know what points were raised in the trial court. Defendant asserts that by reading the information, which is before us, it can be determined that he was not properly informed of the specific acts charged. The information is not artfully drawn, but when the various counts are read in relation to one another, that is, the information is considered as a whole, each count states facts sufficient to constitute a public offense. Defendant has made no showing that he was held to answer without reasonable or probable cause, nor has he pointed to any prejudice by reason of the language of the information, in defending himself in two trials. It appears to us that defendant is, in effect, arguing the merits of a demurrer to the complaint. ■ Since no demurrer was filed, defendant cannot now appeal on the ground of uncertainty. (*People* v. *Atwood*, 223 Cal.App.2d 316, 324 [35 Cal.Rptr. 831]; *People* v. *Heim*, 196 Cal.App.2d 1 [16 Cal.Rptr. 277].)

■ After the first trial, the district attorney dismissed 12 counts of altering or defacing brands on the Cardoza cattle. Defendant argues that after the dismissal of these counts his trial upon the counts of receiving the stolen Cardoza cattle, receiving the stolen Borba cattle, and branding the stolen Borba cattle, placed him in double jeopardy. He concedes that the point was waived when it was not raised in the trial court, but he asserts that the very waiver proves his trial attorney was incompetent, citing *People* v. *Ibarra*, 60 Cal.2d 460, 464-465 [34 Cal.Rptr. 863, 386 P.2d 487].

Evidence adduced at the first trial revealed that although defendant placed his brand on the Cardoza cows, he did not touch, alter, or in any way mutilate the Cardoza brand. Therefore, prior to the second trial the district attorney quite properly dismissed the counts charging defendant with altering the brands on the Cardoza cattle. The counts dismissed bore no relation to the remaining counts upon which defendant was tried in the second trial, so there was no double jeopardy.

■ Turning to the judgments, plaintiff concedes that the stolen heifer alleged in count VII to have been received by defendant, although belonging to a different owner was included in the lot of cattle which defendant was charged in count V with receiving as stolen property. Thus, the judgment of conviction as to count VII must be reversed. (*People* v. *Lyons,* 50 Cal.2d 245, 275 [324 P.2d 556].)

The convictions as to count V, receiving the stolen Borba cattle, and count VI, receiving the stolen Cardoza cattle, stem from separate crimes occurring upon different occasions and involving different cattle. In view of our foregoing discussion of the sufficiency of the evidence, these two counts must be affirmed. Branding the cattle after receiving them presents a different question, however. ■ Although we conclude the conviction was proper as to each of these separate offenses, we conclude that the sentencing for branding in addition to the sentencing for receiving stolen property constitutes double punishment within the rationale of Penal Code section 654.

Plaintiff cites *People* v. *White,* 100 Cal.App.2d 836, 839 [224 P.2d 868], in which the court upheld separate consecutive sentences for the theft of livestock and for altering the brand on the cattle subsequent to the theft. Since the *White* case in 1950, the Supreme Court has articulated Penal Code section 654 by numerous expository opinions clarifying the term "double punishment." Perhaps the leading case is *People* v. *McFarland* (1962) 58 Cal.2d 748, pages 760-763 [26 Cal.Rptr. 473, 376 P.2d 449], which includes references to authorities from other jurisdictions. The gist of *McFarland* is "that the divisibility of a course of conduct depends upon the intent and objective of the defendant; and that if all the offenses are incident to one objective, the defendant may be punished for any one of them but not for more than one." (P. 760) (See also *People* v. *Teale,* 63 Cal.2d 178, 198 [45 Cal.Rptr. 729, 404 P.2d 209]; *People* v. *Ridley,* 63 Cal.2d 671, 677 [47 Cal.Rptr. 796, 408 P.2d 124]; *People* v. *Hicks,* 63 Cal.2d 764, 765-766 [48 Cal.Rptr. 139, 408 P.2d 747].) *People* v. *White, supra,* cited by plaintiff, does not mention intent as to each crime in relation to a common criminal objective, and it does not discuss the question of double punishment in the same posture that *People* v. *McFarland, supra,* and subsequent cases do.

Plaintiff stresses the time lapse between the two acts, receiving the stolen cattle and branding them. The test, however, is not remoteness, but whether both acts are steps in a single criminal objective. Here, the defendant was convicted under

Penal Code section 496 of receiving the stolen cattle with the intent to conceal or withhold them from the owner. Under Agricultural Code section 435 he was convicted of branding the same cattle with the same intent, to prevent identification by the owner. Thus, we conclude that receiving the stolen property and branding them were both acts pursuant to a common objective. In *People* v. *Teale, supra,* the court held that a defendant who was found guilty of kidnapping, robbery and murder, although properly convicted of each crime, could not be sentenced for more than one of them since each was an act in furtherance of a single criminal objective.

 As the cases point out, Penal Code section 654 proscribes double sentencing, not double conviction. Although defendant was properly convicted of both receiving and branding stolen cattle, his sentencing on all counts was improper.

 The appropriate procedure is to eliminate the effect of the judgment as to the lesser offense insofar as the penalty alone is concerned. (*People* v. *McFarland, supra.*) The maximum sentence for conviction of receiving stolen property is not more than 10 years' imprisonment; for "violation of Agricultural Code section 435" the maximum sentence is not more than five years' imprisonment. Therefore, we must reverse the judgment insofar as it relates to punishment for violations of Agricultural Code section 435, subdivision (b).

The judgment of conviction is reversed as to count VII; insofar as it imposes a sentence for violation of Agricultural Code section 435, subdivision (b), the judgment is reversed as to counts I, II, III and IV; in all other respects the judgment is affirmed.

Conley, P. J., concurred.

A petition for a rehearing was denied June 6, 1966, and respondent's petition for a hearing by the Supreme Court was denied July 6, 1966.