[Crim. No. 7298.   Second Dist., Div. One.   Nov. 29, 1960.]

THE PEOPLE, Respondent, v. JOSEPH J. LANZA, Appellant.

Gerald B. Yam for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Respondent.

FOURT, J.—This is an appeal from an order granting probation to appellant after his conviction on a charge of burglary in the second degree upon "the ground that the same is a cruel and inhuman punishment considering the nature of the offense and the circumstances under which the same was allegedly committed."

In an information filed in Los Angeles County it was charged that defendants, on or about January 8, 1960, burglarized a building occupied by Kellogg Builders, Inc. Frederick Lanza was charged with a prior conviction of a felony, namely an attempt to set fire to a building. Each defendant pleaded not guilty and Frederick Lanza pleaded, in addition thereto, not guilty by reason of insanity.

The cause was submitted upon the transcript of the testimony taken at the preliminary hearing. The plea of not guilty by reason of insanity of Frederick was submitted upon the reports of the court-appointed physicians. Each defendant was found guilty of burglary in the second degree. Frederick was found to be sane at the time of the commission of the offense and at the trial. The appellant's motion for a new trial was denied. The imposition of sentence of appellant was suspended and he was placed on probation for five years, a part of the terms being that he pay a fine of a stipulated amount.

A résumé of some of the facts is as follows:

Kellogg Builders were constructing two apartment houses on Carson Street in Los Angeles County in January 1960. The exterior of the buildings was up, roofs and walls were finished, painting and flooring were in the course of construction. It rained for about a week in the middle of January 1960 and during a part of such time work on the buildings was closed down. Some of the laid flooring was damaged because of leaks and it was necessary to tear it up and put down new flooring. The flooring material came in packaged or bundled form. Appellant operated a restaurant near the apartment buildings which were under construction. Appellant's nephew, Frederick Lanza, had a conversation with a deputy sheriff and in the course of such a talk the deputy sheriff ascertained that a burglary had taken place, that on or about January 8, 1960, Frederick Lanza was at his uncle's restaurant and that Joseph

Lanza had told him that he had permission to go to the apartment buildings close by and take some supplies; that Frederick and Joseph Lanza backed up the appellant's station wagon to the apartment buildings and appellant opened a window, Frederick Lanza climbed in and then opened the doors, and that thereafter both defendants entered and removed about 80 bundles of hardwood parquet flooring, about 20 doors and about 30 pieces of other lumber; that the material was loaded into the station wagon and then driven to appellant's house located at West 228th Street where the material was unloaded and placed in appellant's garage. The deputy sheriff checked the story and found that the supplies were missing from the apartment buildings.

Appellant was then arrested at the restaurant and taken to his garage at his home where there were found 63 bundles of flooring, 7 doors and 19 pieces of 6-foot shelving boards. Appellant first told the officers that he was not sure how the bundles of flooring material got there but that he thought his nephew, Frederick Lanza, had placed them in the garage. Later the same day appellant said that Frederick had brought the bundles over behind the restaurant, a few at a time and then stated that Frederick had told him that he had permission to do so. Appellant later admitted that he and Frederick had taken the items from the restaurant to his garage in the station wagon. Appellant stated that he did not remember just when it was that this occurred but that he thought it took three or four days. Appellant stated at first that he had not checked to ascertain whether Frederick had permission to take the material but later stated that he did attempt to check the question but that no one was present at the apartment buildings to inform him about the matter. When asked by the officers why he had taken the materials to his garage, the appellant stated that he thought he might be able to use them and because it looked like rain he wanted to get the items out of any possible rain. Appellant signed a statement after talking with the officers.

There was undisputed testimony that the flooring bundles which were found in the garage were from the bundles of flooring material previously stored in the apartment buildings. There was undisputed evidence that the flooring material was of the same brand and from the same mill as that belonging to Kellogg Builders. The evidence was that the doors appeared to be the same kind of doors as were taken from the apartment buildings. It was also uncontradicted that no

permission was given to either of the defendants to take anything from the apartment buildings or otherwise.

Appellant now asserts in effect that the prosecution merely established possession of the stolen property and that there was no corroboration and further that the prosecution failed to prove appellant guilty beyond a reasonable doubt. Apparently, the appellant has abandoned his original ground, namely that of cruel and inhuman punishment, for it is not even mentioned in his brief.

Mere possession of stolen property is not enough by itself to convict a defendant of a burglary. (*People* v. *Murphy,* 91 Cal.App. 53, 54 [266 P. 374] ; *People* v. *Nelson,* 126 Cal.App.2d 453, 454 [272 P.2d 536] ; *People* v. *Howell,* 126 Cal.App.2d 780, 783 [273 P.2d 79].) There must be some corroborating circumstances such as the accused making conflicting statements which tend to show a consciousness of guilt or his failure to account for the possession of the stolen property or the making of false statements as to how the property came into his possession. The corroborating evidence need be but slight if it is convincing. If the accused does make an explanation as to how he came into possession of the stolen property the question as to whether he is telling the truth in that regard rests solely with the trier of fact. (*People* v. *Taylor,* 4 Cal.App.2d 214, 217 [40 P.2d 870].)

It is apparent that the trial judge in this case believed that there were inconsistencies in the statements of the appellant. In the first instance appellant did not know how the floor bundles got into his garage and later he thought his codefendant had put them there. Still later on he admitted that he and his codefendant hauled the items to the garage in his station wagon. In the first instance the appellant said that he had not checked his codefendant's story to the effect that he had permission to take the items from the apartment building and then later changed his statement to say that he had attempted to check the story of Frederick but that no one was present at the apartment building when he made such an effort. Furthermore, the appellant was familiar with the burglarized premises and this is a circumstance which could have been considered by the judge. (*People* v. *Mercer,* 103 Cal.App.2d 782, 790 [230 P.2d 4].)

Appellant asserts under his second claim that too much time elapsed from the date the items were stolen to the date they were found in his garage to apply the rule to the effect

that possession of stolen property by an accused is some evidence tending to show that the accused was guilty of burglary.

■■■ It was appropriately said in *People* v. *Arbaugh*, 82 Cal.App.2d 971, 987-988 [187 P.2d 866] as follows:

". . . We understand the law to be as stated by the court, that when a burglary has been committed, and the defendant is found in possession of the stolen property, 'however soon after the taking,' such possession of the stolen property is a circumstance which, when unexplained, and taken in connection with other incriminating evidence in the case, may be considered by the jury in determining the question of the guilt or innocence of a defendant charged with the burglary, and the weight or intrinsic value of such evidence of possession in the light of time elapsing between the burglary and the discovery of possession by the defendant is a question for determination by the jury (*People* v. *Russell*, 34 Cal.App.2d 665, 669 [94 P.2d 400] ; *People* v. *Shaw*, 46 Cal.App.2d 768, 771 [117 P.2d 34] ; *People* v. *McCann*, 34 Cal.App.2d 376, 377 [93 P.2d 643] ; *People* v. *Golembiewski*, 25 Cal.App.2d 115, 117 [76 P.2d 717]). The primary question is whether a defendant was found in possession of the stolen property under circumstances and conditions which justify the triers of fact in concluding that he was the guilty party in the burglary charged against him."

In this case there was some testimony that the stolen items were in the apartment buildings two weeks before January 28th, the date on which the materials were located in the appellant's garage. Appellant himself stated on at least one occasion that it took three or four days to move the items to his garage. It would appear therefore that the time lapse could have been 10 days from the date of the stealing of the materials to the date of its finding at appellant's apartment.

We entertain no doubt that there was no undue delay under the circumstances.

The order is affirmed.

Wood, P. J., and Lillie, J., concurred.