[Crim. No. 12320.   Second Dist., Div. Four.   May 9, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. MARGARET LOUISE DUPRE, Defendant and Appellant.

Alex Goldberg for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Andrea Sheridan Ordin, Deputy Attorney General, for Plaintiff and Respondent.

FILES, P. J.—Defendant was tried by a jury and found guilty of two counts of receiving stolen property (Pen. Code, § 496).[1] The subject of count I is a Packard Bell television receiver which was stolen on August 1, 1963. Count II involves a stereo set and an R.C.A. color television receiver which were stolen February 24, 1965.

It is necessary to reverse the judgment because of the absence of substantial evidence that defendant knew the property was stolen.

The evidence shows without contradiction that the stolen articles were found in defendant's residence at 2025 West 64th Street on May 7, 1965. On that occasion the police went to that address for the purpose of arresting Robert Batteau, who was suspected of robbery, burglary and kidnaping.

In the house the officers found Batteau, defendant, defendant's sister, and two other men. The officers noted the serial

---

[1] Penal Code section 496: ''1. Every person who buys or receives any property which has been stolen or which has been obtained in any manner constituting theft or extortion, knowing the same to be so stolen or obtained, or who conceals, withholds or aids in concealing or withholding any such property from the owner, knowing the same to be so stolen or obtained, is punishable by imprisonment in a state prison for not more than 10 years, or in a county jail for not more than 1 year.''

numbers on the television receivers and stereo in the residence, and, after advising defendant of her rights to silence and to counsel, questioned her. Defendant admitted to the officers that she was the person who had rented the house, and that she had lived there about two months.

The arresting officer, Sergeant McCain, testified that defendant had explained to him that the Packard Bell television had been left with her about a year and a half before by a friend by the name of Clifford Jones. She said the color television had been given to her by Robert Green about a month and a half ago, and that approximately six months ago the same Robert Green had given her the stereo set. She told the officer she did not know where either man could be located.

Defendant, testifying on her own behalf, denied that she had had any idea the three items were stolen. She testified that in 1963 Clifton [sic] Jones had been a boyfriend for about four months, that he had had the Packard Bell television set in his room, and that about a year and a half prior to her arrest he had told her he had to go to Chicago because his mother had passed away and that he would leave the television with her. She had not seen him after that.

She testified that she had met Robert Green at a party about September of 1964. About a month and a half later she gave him a door key, and he made a practice of spending the night with her once or twice a week. Green had given her a stove, a refrigerator, a sofa and money, as well as the stereo and color television. He told defendant that he was married and separated from his wife, but defendant did not believe he was separated. When she asked him to tell her his address and telephone number, he refused.

Defendant testified that she had moved from Harvard Street to 64th Street on March 8, 1965, that Green had given her the stereo set about two or two and a half weeks before she moved, and that Green had brought the color television to her new house when she moved. She denied having told Sergeant McCain that she had had the stereo six months. She testified:

"Well, he asked me when did I get this stereo, and I told him that I had gotten the stereo, yes, I said, in other words, I had it about six weeks, in other words, I couldn't remember the exact time, and the colored television he asked me when did I get that, and I told him that the television was brought there the day that I moved in."

Defendant's sister testified that she was present when Robert Green delivered the color television set, and that this had occurred "during the time the stuff was moved from Harvard Street to 64th Street."'

One of the statutory elements to be proved by the prosecution is that the defendant knew the property to have been stolen. Such knowledge may of course be proved circumstantially. A false or evasive explanation given by the defendant is often deemed sufficient for this purpose. In *People* v. *Lyons* (1958) 50 Cal.2d 245, 258 [324 P.2d 556], the court said: "'[P]ossession of stolen property, accompanied by no explanation, or an unsatisfactory explanation of the possession, or by suspicious circumstances, will justify an inference that the goods were received with knowledge that they had been stolen. The rule is generally applied where the accused is found in possession of the articles soon after they were stolen.' 'False or evasive answers to material questions with reference to the ownership of stolen property tend to prove such knowledge.'"

In *People* v. *McFarland* (1962) 58 Cal.2d 748, 755 [26 Cal.Rptr. 473, 376 P.2d 449], this appears:

"The rule may be stated as follows: Where recently stolen property is found in the conscious possession of a defendant who, upon being questioned by the police, gives a false explanation regarding his possession or remains silent under circumstances indicating a consciousness of guilt, an inference of guilt is permissible and it is for the jury to determine whether or not the inference should be drawn in the light of all the evidence. As shown by the California cases cited above, this rule is applicable whether the crime charged is theft, burglary, or knowingly receiving stolen property."

The court added (at p. 756) : "It should also be emphasized that the rule in no way shifts the burden of proof or destroys the presumption of innocence; the prosecution must still satisfy the jury of a defendant's guilt beyond a reasonable doubt."

In the case at bench there is no problem of silence. Defendant spoke freely to the officers who discovered the stolen goods in her residence, and she testified under oath at her trial. There is no evidence connecting defendant even remotely with either theft. Although there was evidence that the police had probable cause to arrest Batteau, who was found in defendant's house, there was no evidence connecting him with the theft of the property here involved. The length

of time between the thefts and the arrival of the property in defendant's possession is, under the circumstances of this case, a neutral factor. Defendant's explanation, if true, completely exonerates her.

There is nothing inherently improbable in the story that her former boyfriend, Clifton Jones, left his television with her when he moved to Chicago. Nor is it incredible that a married man who enjoyed the privileges of defendant's home would provide a color television and a stereo set for their common enjoyment, and at the same time refuse to disclose his own address and telephone number. Defendant's inability to provide corroboration was a natural result of the arrangement which she described. It is understandable that Mr. Green would make himself unavailable when it was discovered that his gifts were stolen property.

The Attorney General is left only with the argument that the jury must have found that defendant's testimony constituted ''an unsatisfactory explanation.''

A jury is not altogether free to reject as ''unsatisfactory'' whatever explanation the defendant gives. There must be some flaw in the explanation itself, or it must be discredited by other evidence. Otherwise the jury would, in effect, be authorized to convict upon proof of possession irrespective of what explanation had been made. No authority has been found for that proposition.

The Attorney General points to two conflicts between defendant's testimony in court and the testimony of the arresting officer as to what she had told him:

(1) Defendant named Clifton Jones the donor of the Packard Bell television, but Sergeant McCain had the name as ''Clifford Jones.''

(2) Defendant testified she had had the color television about six weeks at the time of her arrest, but Sergeant McCain testified she had told him six months.

In appraising the effect of that evidence it is important to have in mind that defendant had no burden of proof, and her credibility is not in issue except to the extent that a deliberate falsehood may indicate consciousness of guilt. In *People* v. *Wayne* (1953) 41 Cal.2d 814 [264 P.2d 547],[2] discussing the effect of the defendant's statements as corroboration for the

---

[2]Disapproved on another point in *People* v. *Snyder* (1958) 50 Cal.2d 190, 197 [324 P.2d 1]. The *Wayne* case held, among other things, that the prosecutor was not guilty of misconduct in commenting upon the defendant's refusal to testify before the grand jury. That was the holding disapproved in *Snyder*.

testimony of an accomplice, the court said (at p. 823): "It should be emphasized that no inference of consciousness of guilt can be drawn from the mere fact that the jury, in order to convict, must have disbelieved defendant's explanation of his relationship with May and Redden; only where the false statement or testimony is intentional rather than merely mistaken and where such statement or testimony suggests that defendant has no true exculpatory explanation can it be considered as an admission of guilt. (See concurring opinion of Justice Traynor in *People* v. *Albertson* (1944) 23 Cal.2d 550, 581-582 [145 P.2d 7]; . . ."

The *Albertson* opinion contains this (at p. 582): "It has never been suggested, however, that every falsehood voiced by the defendant between the time of the crime and the trial can be admitted on this basis, for it is well known that all persons are liable to make errors in the description of past events. Consciousness of guilt is proved, not by evidence of such slips, but by fabrications which, like devious alibis, are apparently motivated by fear of detection, or which, like devious explanations of the possession of stolen goods, suggest that there is no honest explanation for incriminating circumstances and thus are admissions of guilt."

The Clifford versus Clifton issue illustrates the frailty of this species of impeachment. When defendant was on the witness stand, her attorney used the name "Clifford Jones" on two occasions and defendant said "Clifton" on four occasions without anyone's appearing to notice the discrepancy until the trial judge spoke:

"THE COURT: Something about Clifton. Where did he get in there?

"THE WITNESS: Pardon?

"THE COURT: Didn't he say something about Clifton?

"MR. COHEN: It was Clifton Jones, your Honor.

"THE COURT: I missed it before. I heard my last name, I thought I would ask. Go ahead."

The fact that the arresting officer understood her to say "Clifford" is no evidence at all of consciousness of guilt.

The discrepancy as to the time of possession of the stereo could have a different significance because the property had been stolen about two and a half months prior to the date of the arrest.

The officer's testimony that she had told him she had had the set six months could have resulted from her confusion at the time of arrest or from his misunderstanding her or from a

conscious attempt on her part to deceive. In the absence of other evidence of guilty knowledge, it is difficult to support a case on that single conflict.

All of the authorities relied upon by the respondent involve much more evidence than this.

In *People* v. *Lyons* (1958) 50 Cal.2d 245 [324 P.2d 556], the defendant was an attorney. His client, awaiting trial on a criminal charge, gave him a stolen watch as a part of the fee. Another man gave defendant a stolen fur coat. When arrested, defendant told the police that he had had the watch "for some time" and he denied knowing anything about any fur coat. The Supreme Court pointed out (at p. 258) that since the defendant had received the watch only the evening before the arrest, his statement "was a consciously evasive and misleading explanation"; and defendant's statement about the fur coat could only be a conscious falsehood.

In *People* v. *Citrino* (1956) 46 Cal.2d 284 [294 P.2d 32], a burglary case, the defendant explained his possession of stolen property by saying it was a gift from "Cotelli," then he said he had received it from his father; he sold the goods at a price below the market and signed the bill of sale with the name "Cotelli."

In *People* v. *Lanza* (1960) 186 Cal.App.2d 860 [9 Cal.Rptr. 161], another burglary case cited by respondent, stolen building materials were found in defendant's garage. First he said he did not know how they got there, then he said he had helped his nephew put them there. He said he had not checked to ascertain whether the nephew had had permission to take the materials, but later he stated he did attempt to check by going to the building from which the materials had been taken.

In *People* v. *Lopez* (1954) 126 Cal.App.2d 274 [271 P.2d 874], a leading case on receiving stolen goods, the defendant was convicted on four counts. As to three of them, two boys, aged 14 and 15, testified that they had stolen the articles and taken them to defendant, who bought them at a fraction of the retail price without making any inquiry as to the source of the goods or the reason for the sale. As to the other count defendant gave three distinct versions of how he happened to have the property. Those contradictions were weighed with the evidence on the other counts which proved his willingness to deal in stolen goods.

In each of the cited cases the explanation first offered by the defendant differed grossly from the facts proved at the

trial. No question could have arisen in any of those cases as to whether an innocent mistake could have been made in the defendant's extrajudicial statement or in the officer's understanding of it. No case has been called to the court's attention where guilty knowledge was inferred from a contradiction as slight and as readily explainable as the one in this record. (Compare *People* v. *Mangum* (1966) 246 Cal.App.2d 550, 552 [54 Cal.Rptr. 743], reversing a theft conviction.)

The function of weighing evidence belongs to the jury exclusively; but it is the duty of the reviewing court to declare whether the record contained any substantial evidence to support the verdict. (See *People* v. *Hall,* 62 Cal.2d 104, 109 [41 Cal.Rptr. 284, 396 P.2d 700].)

The judgment is reversed.

Jefferson, J., and Kingsley, J., concurred.

On May 27, 1968, the opinion was modified to read as printed above.